IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TYRONE GILL, #N10443,                          )
                                               )
          Plaintiff,                           )
                                               )
     vs.                                       )     Case No. 25-cv-00915-SMY
                                               )
WARDEN WILLS (Menard),                         )
JOLEEN KUMP (Menard ADA Coord.),               )
A. CRAIN (Menard HCU),                         )
WEXFORD HEALTH SOURCE,                         )
WARDEN GALLOWAY (Shawnee),                     )
MICHELLE GENTLE (Shawnee HCU), and             )
DR. DAVID (Shawnee),                           )
                                               )
          Defendants.                          )

## MEMORANDUM AND ORDER

**YANDLE, Chief Judge:**

Plaintiff Tyrone Gill, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Dixon Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred at Menard and Shawnee Correctional Centers. He raises Eighth Amendment claims for delays/denial of treatment for his serious medical conditions and for poor cell conditions, and asserts violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. and the Rehabilitation Act ("RA"), 29 U.S.C. § 701, *et seq*.[1] (Doc. 1). Plaintiff seeks monetary damages (Doc. 1, p. 26).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious,

---

[1] Although Plaintiff mentions only the ADA, "the [RA] is available to him, and courts are supposed to analyze a litigant's claims and not just the legal theories that he propounds, especially when he is litigating *pro se*." *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) (internal citations omitted).

1

fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed.  28 U.S.C. § 1915A(b).

### The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): Plaintiff arrived at Menard on February 7, 2024 after a transfer from Pontiac Correctional Center (Doc. 1, p. 10).  He immediately began submitting sick call requests seeking treatment for a serious neck injury; problems with his right shoulder, lower back, left knee; abdominal pain; and a large hernia "hanging out of his stomach." *Id.*  Plaintiff submitted over 45 sick call requests between February 8, 2024 and May 13, 2024. During this time, he also wrote three letters to Defendant Crain (Health Care Administrator) and three letters to Defendant Warden Wills seeking medical care.  Plaintiff spoke in person to Wills about his medical problems in March 2024.  Plaintiff's grievances filed on February 23, 2024 were not answered by the Health Care Unit until ten months later (Doc. 1, p. 16).

Plaintiff was not seen by a medical provider until May 13, 2024, when he finally received a refill of his pain medications that had expired as of February 15, 2024.

Defendants Wexford Health Source ("Wexford"), Wills, and Crain understaffed the health care department, causing delays in Plaintiff's care (Doc. 1, p. 11). Menard had no doctor on staff from Plaintiff's arrival in February 2024 until May 2024 (Doc. 1, p. 16).

On February 8, 2024, Plaintiff requested to be placed in protective custody ("PC") and was moved to Menard's PC Receiving Unit.  While there, he was deprived of clothing, soap, toothpaste, and towels, and had no access to his legal documents, law library, chapel, yard, or gym.  The Receiving Unit cell was not heated and the air conditioner was on.  Plaintiff complained about the cold to the officers in charge who told him to sign out of PC if he didn't want to face the cold.

Plaintiff's three letters to Wills about these conditions yielded no response (Doc. 1, pp. 12-13).

On April 20, 2024, Plaintiff wrote an emergency grievance to Wills complaining of blackouts and pain he attributed to poisoning from fentanyl contamination (Doc. 1, pp. 13-14). During March and April 2024, several prison staff members blacked out due to fentanyl and 15 prisoners died.  Plaintiff was threatened with segregation if he asked for medical treatment.

Plaintiff was diagnosed as hard of hearing in 2015, which is noted on his ID card and cell door (Doc. 1, pp. 14-16). An ear flush on September 26, 2024 did not improve his symptoms of ringing in the ears, headache, and dizziness.  An audiologist tested Plaintiff on June 25, 2024 and determined he did not qualify for hearing aids.  Defendant ADA Coordinator Joleen Kump refused to refer Plaintiff to a specialist or to give him equipment such as a special watch or headphones, even though Plaintiff formerly had some assistive/ADA equipment for his hearing loss.

Plaintiff was transferred to Shawnee Correctional Center on January 28, 2025 (Doc. 1, p. 17).  He started submitting sick call requests the next day but did not see a provider until March 3, 2025, when he was told he could not see a doctor until he had submitted two sick call slips. Plaintiff wrote to Defendants Warden Galloway and Gentle (Health Care Administrator) and filed grievances seeking medical care, but got no response (Doc. 1, pp. 20, 25).

After submitting 15 request slips over 34 days, Plaintiff finally saw Defendant Dr. David on March 6, 2025.  He sought treatment for his hernias, abdominal pain, right shoulder, neck, and lower back (Doc. 1, pp. 18-19).  Dr. David would not treat or refer Plaintiff for any of these issues, stating he would only renew Plaintiff's medical permits.

Plaintiff's pain medications for his neck, back, shoulder, and knee pain expired on February 16, 2025.  Dr. David failed to renew the prescriptions for another month, even though Wexford's records showed he had been on the medication.  Plaintiff suffered withdrawal symptoms while he

3

was without the pain medicine.  Dr. David refused to refill Plaintiff's prescription for nasal spray to help with his breathing and sinus illness (Doc. 1, p. 18).

Wexford's policy/procedure requiring two or more request slips before receiving a doctor referral delayed Plaintiff's ability to access treatment (Doc. 1, pp. 19, 25).  This policy also prevented Plaintiff from being treated on April 18, 2025 for problems with his right hip and both feet (Doc. 1, p. 24).  Plaintiff had been treated for over eight years in other IDOC institutions for these documented problems.  Plaintiff was still suffering pain and waiting for medical treatment when he filed the Complaint (Doc. 1, pp. 24-25).

On February 21, 2025, Plaintiff was placed in Shawnee's unit 3-C, cell #14 (Doc. 1, p. 20). The window was broken and would not close, allowing in the 18-degree outside air.  Plaintiff remained in that freezing cell until March 27, 2025 (Doc. 1, p. 21).

Plaintiff wrote an emergency grievance to Galloway and a second grievance, but the window was never fixed and Plaintiff was not moved.  The cell was infested with ants, as were two other cells where Plaintiff was later housed.  Nothing was done despite Plaintiff's in-person request to Galloway on April 18, 2025 and grievances and letters to him (Doc. 1, pp. 21-22, 24). Plaintiff was still living in a cell with a broken window and ant infestation when he filed the Complaint (Doc. 1, p. 24).

Plaintiff was found guilty on December 11, 2024 of a disciplinary charge incurred at Menard.  After Plaintiff's transfer to Shawnee, he was placed in a unit where his privileges were revoked beyond the punishment imposed at Menard.  These sanctions were improper under the Illinois Administrative Code (Doc. 1, pp. 22-23).

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

| | |
|---|---|
| Count 1: | Eighth Amendment deliberate indifference to serious medical needs claim against Wexford and Menard Defendants Wills, and Crain, for delaying and denying medical care for Plaintiff's neck injury/pain, shoulder, back, and knee conditions, abdominal pain, and hernia, from February 8, 2024 to May 13, 2024, while there was no doctor at Menard due to Wexford's and Wills' understaffing of medical providers. |
| Count 2: | Eighth Amendment claim against Wills for failing to remedy the cold conditions in Plaintiff's PC Receiving Unit cell beginning on February 8, 2024. |
| Count 3: | Eighth Amendment deliberate indifference claim against Wills for failing to respond to Plaintiff's emergency grievance regarding fentanyl poisoning. |
| Count 4: | ADA and/or RA claim against Menard Defendant Kump for failing to provide equipment to accommodate Plaintiff's hearing loss. |
| Count 5: | Eighth Amendment deliberate indifference claim against Wexford and Shawnee Defendants Galloway, Gentle, and David for delaying and denying medical care for Plaintiff's neck injury/pain, shoulder, back, and knee conditions, abdominal pain, and hernia, from January 28, 2025 through May 2025, including delays due to Wexford's and Shawnee's sick call policy. |
| Count 6: | Eighth Amendment claim against Galloway for failing to remedy the broken window(s) in Plaintiff's freezing cell(s) and the ant infestation in those cells, between February 21, 2025 and May 2025. |
| Count 7: | Claim against Galloway for imposing unauthorized sanctions at Shawnee after Plaintiff was found guilty of a disciplinary charge from Menard. |

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

**Severance of Claims**

Rule 20 of the Federal Rules of Civil Procedure prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each defendant that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); 3A *Moore's Federal Practice* § 20.06, at 2036-45 (2d ed. 1978).

Plaintiff brings two sets of claims – Counts 1-4 that arose at Menard against Defendant Wills and others, and Counts 5-7 against Galloway and other Shawnee defendants. Because Defendant Wexford is implicated in both the Menard and Shawnee claims, Counts 1-3 and Counts 5-7 may proceed together in this case. However, Count 4 names only one defendant – Menard ADA Coordinator Joleen Kump – who is not associated with any other claims. The claim against Kump in Count 4 arose from transactions and occurrences that are distinct from the claims in Counts 1-3 and Counts 5-7. Count 4 does not share any common question of law or fact with the other Menard claims or with the Shawnee claims, and involves a different defendant. As such, the Court will sever the improperly joined claim in Count 4 into a separate lawsuit. *See* FED. R. CIV. P. 18, 20, and 21. Counts 1-3 and Counts 5-7 will remain in the present case.

Plaintiff will have the opportunity to voluntarily dismiss the severed case consisting of the claim in Count 4 if he does not wish to pursue it.

**Discussion**

**Count 1**

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical

needs.  *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017).  To state such a claim, a prisoner must plead facts suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs.  *Id.*  An objectively serious condition includes a condition that significantly affects an individual's daily activities or which involves chronic and substantial pain.  *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it."  *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

Plaintiff's allegations are sufficient to state a claim for deliberate indifference in Count 1 against Wills and Crain.  Additionally, Plaintiff has stated a viable policy/practice claim against Wexford for understaffing Menard's health care unit.  *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation).

**Count 2**

Extreme temperatures in a prison cell can violate the Eighth Amendment's prohibition against cruel and unusual punishment.  A lack of heat, particularly when the inmate is not given adequate clothing, blankets, or other means to combat the cold, may amount to a constitutional violation.  *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997).  The severity of the extreme temperature as well as the duration of the cell conditions must be considered to determine whether a violation has occurred.  *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022).  The conditions must have resulted in an unquestioned and serious deprivation of a basic human need such as physical safety.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Plaintiff alleges he wrote to Wills about the freezing conditions in February 2024, but Wills

failed to respond or correct those conditions.  Plaintiff's first letter was dated February 9, 2024, and his third was written on February 23, 2024, indicating he was subjected to the extreme cold for at least two weeks (Doc. 1, pp. 42-44).  Based on these allegations, the Eighth Amendment claim in Count 2 may proceed against Wills for confining Plaintiff in the cold cell.

Plaintiff fails to state a claim upon which relief may be granted as to his other complaints while he was in the Receiving Unit (alleged lack of access to clothing and hygiene products, or to privileges such as law library and yard).  He does not include factual allegations indicating he suffered a deprivation of constitutional magnitude from these conditions.

### Count 3

Plaintiff alleges he suffered a blackout, chest pain, dizziness, and migraine headache from inhaling fentanyl fumes in April 2024 at Menard.  He claims Wills failed to respond to his April 20, 2024 emergency grievance seeking medical treatment (Doc. 1-1, pp. 10-11).  Other Menard staff allegedly threatened Plaintiff with segregation and an investigation if he requested medical treatment for this issue.  Plaintiff's attached documents show Wills determined the grievance in which Plaintiff requested to be moved to a safe environment free of fentanyl was not an emergency (Doc. 1-1, pp. 8-11).  It was later determined that Plaintiff was not eligible for a transfer.

Plaintiff did not ask for medical treatment related to the fentanyl in the grievance, and he does not claim that Wills threatened him if he requested treatment.  As such, the Complaint does not suggest any misconduct on the part of Wills.  He does not incur any liability merely by reviewing Plaintiff's grievance.  *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017).  Count 3 will be dismissed for failure to state a claim upon which relief may be granted.

### Count 5

Under the standards outlined in Count 1, Plaintiff sufficiently states a deliberate

indifference claim in Count 5 against Shawnee Defendants Galloway, Gentle, and David for denying and delaying medical care for Plaintiff's serious conditions at Shawnee. To the extent that Wexford was responsible for the policy/practice that created delays by requiring Plaintiff to submit two sick call slips and be seen twice by a nurse before he could be referred to a doctor, Count 5 may also proceed against Wexford.

### Count 6

Plaintiff's allegation of being held in cells at Shawnee with broken windows that let in freezing air is sufficient to state an Eighth Amendment claim against Galloway (see Count 2 discussion above). Count 6 may also proceed against Galloway for failing to remedy the ant infestation despite Plaintiff's complaints to him in February and March 2025 (Doc. 1, pp. 47-48). *See Thomas v. Illinois*, 697 F.3d 612, 615 (7th Cir. 2012).

### Count 7

Plaintiff states he was punished with one month of C-grade after he was found guilty of a disciplinary infraction at Menard, shortly before he was transferred to Shawnee (Doc. 1, pp. 22-23). At Shawnee Plaintiff was placed in the SIP unit, where he allegedly lost privileges including TV, yard, gym, commissary, and dayroom.

Plaintiff's description of the additional "sanctions" Galloway imposed at Shawnee does not suggest he suffered an atypical or significant hardship amounting to deprivation of a protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). Count 7 will therefore be dismissed for failure to state a claim upon which relief may be granted.

### Disposition

Count 4 against Jolene Kump is **SEVERED** into a new case. In the new case, the Clerk is **DIRECTED** to file the following documents:

9

- This Memorandum and Order;

- The Complaint (Doc. 1);

- Plaintiff's motion to proceed IFP (Doc. 2).[2]

In the new case, Plaintiff shall have the option to proceed on the severed Count 4 or to dismiss the case without prejudice and before he is required to pay a fee. Count 4 and Defendant Joleen Kump are **DISMISSED** from *this* case with prejudice.

The Complaint states colorable claims in Count 1 against Wills, Crain, and Wexford; in Count 2 against Wills; in Count 5 against Galloway, Gentle, David, and Wexford; and in Count 6 against Galloway. Counts 3 and 7 are **DISMISSED** without prejudice.

The Clerk shall prepare for Warden Wills, A. Crain, Wexford Health Source, Warden Galloway, Michelle Gentle, and Dr. David: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be

---

[2] The Court notes that Plaintiff's motion to proceed IFP in the instant case was denied (Doc. 6), and Plaintiff then paid the $405 filing fee.

retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs.

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED: July 20, 2026**

**STACI M. YANDLE**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an

appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.